Kataza TAIFA, Paul Komyatti, William Sampley, Mark S. Douglas, Aaron Isby, Kevin Sandifer, James E. Shropshire, John Charles Cole, Jr. Preston Gardner, Edward Broadus, James Thompson, Nolan McDandal, Robert Smith, Robert Jenkins, Richard Mumford, Tillman Morris, Michael Hegwood, Terrence Drain, Eric Malone, Michael Holland, Albert Estep, and Roosevelt Williams, Plaintiffs,

v.

Evan BAYH, in his individual and official capacity as Governor of the State of Indiana, James E. Aiken, in his individual and official capacity as Commissioner of the Indiana Department of Correction, Norman G. Owens, in his individu-

al and official capacity as Director of the Classification Division of the Indiana Department of Correction; John Nunn, in his individual and official capacity as Deputy Commissioner of Operations of the Department of Correction, and Charles E. Wright, in his individual and official capacity as Director of the Maximum Control Complex of the Indiana Department of Correction, Defendants.

No. 3:92cv0429 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 11, 1994.

Richard A. Waples, Indiana Civ. Liberties Union, Hamid R. Kashani, Indianapolis, IN, for plaintiffs.

Roosevelt Williams, pro se.

Wayne E. Uhl, Office of Indiana Atty. Gen., Indianapolis, IN, for defendants.

## ORDER

ALLEN SHARP, Chief Judge.

On or about January 5, 1994, the Honorable Robin D. Pierce, United States Magistrate Judge, entered a Report and Recommendation. There are numerous objections thereto, which the court has carefully examined. These plaintiffs are represented ably by Richard A. Waples and Hamid R. Kashani, both of whom this court knows to have great expertise in the area of prisoner civil rights. The court has carefully examined this Report and Recommendation, and commends both counsel and the United States Magistrate Judge for extraordinary efforts in this difficult species of prisoner civil rights litigation under 42 U.S.C. § 1983. This record indicates once again that such is plain hard work for both counsel and the judiciary. This court is without any reservations whatsoever in fully and completely approving the Report and Recommendation that the agreed entry, as well as the parties' agreements regarding state court claims, be and they are in all respects **APPROVED**. This renders **MOOT** various and sundry handwritten motions for other relief, including the appointment of counsel, filed since the entry of the Report and Recommendation. **IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

PIERCE, United States Magistrate Judge.

This class action challenges the assignment of prisoners to, and the conditions of confinement at, the Maximum Control Complex ("MCC") operated by the Indiana Department of Correction ("DOC") in Westville, Indiana. The MCC is a modern maximum security correctional facility which was opened by the DOC in the summer of 1991. The parties have reached a negotiated settlement and the matter is now before the court on their joint motions to approve an agreed entry and their agreement regarding state court claims. For the reasons which follow, it is recommended that the motions be granted and that the proposed settlement agreement embodied in the attached Agreed Entry and agreement regarding state court claims be approved.

### Procedural History

This case was originally filed in the Marion County Superior Court on May 6, 1992, against the Governor of Indiana and various DOC officials. Plaintiffs filed an amended complaint on May 22, 1992. The action was subsequently removed, on defendants' motion, to the United States District Court for the Southern District of Indiana, on May 29, 1992, and ultimately transferred to this court on July 7, 1992. Thereafter, on October 2, 1992, Chief Judge Sharp certified this case as a class action solely for "purposes of injunctive relief," with the class "consisting of all persons who, as of May 4, 1992, and thereafter in the future, are confined or will be confined in the Maximum Control Complex in Westville, Indiana." Plaintiffs' state law claims were later remanded to state court on December 4, 1992.

### The Complaint

The amended complaint (hereinafter "the complaint") alleges, among other things, that defendants have implemented a program at the MCC which incarcerates prisoners in long-term solitary confinement, subjects them sensory deprivation and arbitrary and irrational rules, physically abuses them, denies them visitation and medical and psychiatric care, and deprives them of educational, vocational, recreational, and other rehabilitative programs. The complaint further alleges that this punitive segregation scheme vio-

lates the due process protections of the Fourteenth Amendment and constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The complaint further alleges that the DOC has circumvented state statutory restrictions on classification and assignment of prisoners at the MCC, and that the DOC's internal admission procedures are subjective, thereby permitting DOC officials excessive discretion in assigning prisoners to the MCC. According to the complaint, prisoners are not provided with notice of any charges against them or given any hearing to contest their assignment to the MCC.

The complaint also includes challenges to various alleged conditions of confinement at the MCC, including: the denial of telephone privileges and use of radios and televisions; arbitrary discipline; the removal of bedding as punishment for minor infractions; extremely cold temperatures within the facility; restrictions on visitation; limited out-of-cell time; constantly illuminated cells; prohibiting the display of personal items; denial of vocational, educational and rehabilitative opportunities; denial of meaningful recreation and exercise time; contaminated drinking water; restricted access to the courts and inadequate law library; tampering with prisoner mail; confiscation of religious materials; restrictions on taking Bible study correspondence courses; unavailability of commissary items; verbal harassment; physical abuse; and denial of adequate medical and mental health care.

### Settlement Negotiations

Court-sponsored settlement discussions began with a meeting between the undersigned and counsel for the respective parties at the Westville Correctional Center on November 10, 1992. Additional conferences with the court or between counsel were conducted on February 1, February 23, April 12, April 13, April 21, April 29, May 7, June 29, July 19 and July 27, 1993. On February 1, 1993, the undersigned visited and inspected the MCC, and held a preliminary hearing for the purpose of receiving comments by prisoner representatives concerning a prospective settlement. Following the preparation of a preliminary draft of the agreed entry, class counsel discussed various aspects of the proposed settlement with class representatives, as well as a number of class members. Class counsel indicate that they exchanged literally hundreds of telephone calls and items of correspondence with MCC prisoners; that they visited the MCC and held meetings with prisoners to discuss possible settlement proposals; and that comments, suggestions and objections were received from the prisoners and discussed during settlement negotiations. The court conducted another hearing on October 12, 1993. Prior to that time, class counsel provided the court with all comments, including statements of support as well as objections, which they had received from MCC prisoners. The court also received a number of letters and written comments directly from MCC inmates, and those were included in the record. Based upon a review of the prisoner comments, the court selected a number of representative prisoners to testify at the hearing. During that hearing, the prisoners were given an opportunity to express their views in favor of, or in opposition to, the Agreed Entry, and several of their written statements were introduced as exhibits.

### Adequacy of Notice

On November 2, 1993, the parties filed a joint motion requesting court approval of a proposed notice of the settlement. The court granted the parties' motion and approved the notice on the same date. Subsequently, on November 5, 1993, the Notice of Settlement was distributed by MCC staff to all prisoners then confined at the MCC. Along with a copy of the notice itself, each prisoner received an "Agreed Entry Support/Opposition Form," a copy of the entire Agreed Entry, and copies of attachments to the Agreed Entry. The notice summarized the provisions of the Agreed Entry and informed the prisoners that they were required to file any objections to it within 20 days. The court subsequently received written responses from 68 out of the approximately 200 prisoners currently incarcerated at the MCC. Of the comments received, 26 opposed the settlement, while 42 indicated their approval.

Based upon its review of the procedure the parties have adopted for notifying class members of the proposed settlement, the court finds that the class members have been fully and accurately advised of the terms of the Agreed Entry, as well as the procedure for bringing comments supporting or opposing the Agreed Entry to the attention of the court. In addition, the 20–day comment period provided pursuant to this court's Order fully satisfied the requirements of Rule 23(e) of the Federal Rules of Civil Procedure. *See e.g. Van Horn v. Trickey,* 840 F.2d 604, 606 (8th Cir.1988); *Diaz v. Romer,* 801 F.Supp. 405, 408 (D.Colo.1992).

### Summary of Settlement Terms

In general, the Agreed Entry would provide for: the assignment of prisoners to the MCC only under specified conditions; the transfer of prisoners out of the MCC after a specified period of time, provided that certain conditions are met; a commissary at the MCC, with a list of particular items to be made available; inmate access to radios and televisions under specified conditions and at inmate expense; expanded visitation and telephone privileges; the availability of additional reading materials for prisoners; increased opportunities for prisoner recreation; increased privileges with respect to keeping of personal property in cells and in the storage room; improvements in the condition of bedding; a decrease in the intensity of the 24–hour lights in the cells; additional access by prisoners to personal hygienic items; the establishment of a policy concerning the use of force by DOC personnel; expanded provisions for medical care, including mandatory psychiatric evaluations for all prisoners upon their admittance to the MCC; an expanded law library containing specified reference materials, and provisions for greater access to legal materials by prisoners; increased educational opportunities for prisoners; a substance abuse program; and improvements in inmate grievance procedures.

The proposed Agreed Entry would also dispose of plaintiffs' injunctive claims currently pending in state court. Further, once a settlement is reached regarding plaintiffs' individual damage claims in this case, plaintiffs have agreed to dismiss the state court action in its entirety.

### Approval of Settlement

Before a court can approve a class action settlement, it must determine that the settlement is lawful, fair, reasonable and adequate. *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir.1985); *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir. 1982); *Armstrong v. Board of Sch. Directors, etc.,* 616 F.2d 305, 313 (7th Cir.1980). Among the factors that a court should consider in making this "fairness" determination are: the strength of the plaintiffs' case compared to the defendants' offer; the likely length, complexity and expense of further litigation; the amount of opposition to the settlement among affected parties; the opinion of competent counsel; and the stage of the proceedings and the amount of discovery already completed. *E.E.O.C.,* 768 F.2d at 889; *Armstrong,* 616 F.2d at 314. In considering a proposed class action settlement, a court may either approve or disapprove of the settlement; it may not rewrite the parties' agreement. *Armstrong,* 616 F.2d at 315; *Harris v. Pernsley,* 654 F.Supp. 1042, 1049 (E.D.Pa.1987). A court "may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate." *E.E.O.C.,* 768 F.2d at 889.

The first factor—the strength of the plaintiffs' case compared with the defendants' offer—is considered the most important. *E.E.O.C.,* 768 F.2d at 889; *Armstrong,* 616 F.2d at 314. In this regard, the court firmly believes that plaintiffs' chances of success at a trial on the merits would have been relatively low by comparison to what defendants have offered under the Agreed Entry. One of plaintiffs' principal concerns centers upon their assignment to the MCC as part of the DOC's classification process, rather than as a result of disciplinary proceedings with their attendant due process protections. It is well-established, however, that "an inmate has no liberty interest in confinement at any particular state prison and that the prison officials may effect discretionary transfers of an inmate without implicating the due process clause, even if the conditions at one

prison are substantially worse than another." *King v. Fairman,* 997 F.2d 259, 262 n. 4 (7th Cir.1993). Indeed, the Supreme Court has explicitly "rejected the notion 'that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.'" *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (quoting *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)).

> As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight the Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labelled as disciplinary or punitive.

*Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Against this background, it is doubtful that the plaintiffs' complaints regarding their transfer to, and indefinite confinement at, the MCC would succeed. But the defendants have agreed, nevertheless, to only assign prisoners to the MCC under specified conditions and to transfer prisoners out of the MCC after a specified period of time, subject to certain conditions.

The plaintiffs have also challenged various conditions of their confinement at the MCC on Eighth Amendment grounds, claiming that they have been subjected to cruel and unusual punishment. One of plaintiffs' primary complaints in this regard is concerned with alleged "sensory deprivation" resulting from their confinement in individual, constantly-illuminated cells, with limited access to reading material and recreation, no access to radios, televisions and educational materials, and substantial restrictions on visitation and commissary access. It is apparent, however, that the task of proving defendants' liability under the Eighth Amendment for the conditions of confinement at the MCC would be formidable.

In *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Supreme Court held that the same "deliberate indifference" standard which had previously been applied to medical claims under the Eighth Amendment also governed Eighth Amendment challenges to prison conditions. Thus, the Seventh Circuit in *Steading v. Thompson,* 941 F.2d 498 (7th Cir.1991) observed that

> prisoners who contest the conditions of their confinement under the eighth amendment must establish that their custodians either established the conditions to inflict wanton pain or are deliberately indifferent to whether the conditions have these effects. The eighth amendment is concerned with 'punishment', and the Court held in *Wilson* that showing a culpable mental state is essential in establishing that conditions of confinement are part of the 'punishment.'

941 F.2d at 500.

Here, it is apparent that plaintiffs would have a difficult time proving that defendants established the conditions at the MCC, an outwardly clean, bright and modern corrections facility, to inflict wanton pain, or that the defendants are deliberately indifferent to whether the conditions at the MCC have such an effect. Defendants, nevertheless, have agreed to alter MCC conditions in a multitude of areas. Indeed, over 30 pages of the Agreed Entry are addressed to substantial changes in plaintiffs' favor, many of which would likely not have been included in any final decree even if plaintiffs were to succeed at trial.

As for the second factor, the court finds that continued litigation would require the resolution of many difficult and complex issues, entail considerable additional expense, and likely involve weeks, perhaps months, of trial time. Because many of plaintiffs' claims are concerned with the psychological impact of various conditions or combinations of conditions, considerable testimony would be required from experts in fields such as psychology and correctional administration. *See e.g. Hendrix v. Faulkner,* 525 F.Supp. 435

(N.D.Ind.1981). The resolution of plaintiffs' injunctive claims at this juncture through the proposed Agreed Entry will result in considerable savings in terms of time and expense. Clearly, the Agreed Entry represents an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial.

The amount of opposition to the proposed settlement is not, in court's view, substantial or controlling. Prior to the hearing of October 12, 1993, class counsel provided the court with copies of all inmate comments they had received pursuant to their own poll. Of a sample of 61 inmates, 19 supported the proposed Agreed Entry, 19 were opposed, 4 abstained, and 19 furnished no response. The court also received comments directly from a few inmates expressing opposition to the proposed settlement. While it is possible that some of the inmates who expressed opposition to the settlement prior to the October hearing did not bother to reaffirm their opposition following the dissemination of the formal, court-approved November notice, the court believes that the level of opposition among inmates has generally subsided, perhaps due to increased understanding of the terms of the proposed Agreed Entry. Following the court-approved notice, only 26 inmates out of a population of approximately 200 returned statements in opposition. The inmates who filed written objections pursuant to the court-approved notice are outnumbered almost 2 to 1 by those expressing approval, and they represent little more than 10 percent of the inmate population. The level of inmate opposition here does not justify withholding approval of the Agreed Entry. *See Van Horn,* 840 F.2d at 606 (class settlement approved where approximately 180 out of 400 inmates objected).

Many of the prisoners who have submitted objections find disagreement with some detail of personal interest, while ignoring the fact that the agreement achieves significant improvements or reforms in a variety of other areas. The court is also convinced that a number of inmates who have indicated a desire to proceed to trial fail to appreciate the difficulty of establishing their claims under prevailing case law and have not comprehended the benefits of a detailed and comprehensive consent decree over any decree likely to be fashioned by the court.

One small group of prisoners requires specific mention. Four of the 26 prisoners who have submitted written objections pursuant to the court-approved notice are worried that, as so-called "temporary" inmates, they have been overlooked or not included in the Agreed Entry. Their concerns are unfounded. The Agreed Entry clearly applies to *all* members of the inmate class, which includes "all persons who ... are confined or will be confined in the Maximum Control Complex." The Agreed Entry makes no allowance for, and thus does not permit, the assignment of prisoners to the MCC outside of the criteria and procedures set-forth in Section I.

The fourth factor calls for consideration of the opinion of competent counsel. In this regard, class counsel Richard A. Waples and Hamid R. Kashani have submitted affidavits describing their qualifications. Based upon those affidavits, as well as the court's own observations during many hours of settlement negotiations and hearings, the court believes that Mr. Waples and Mr. Kashani are well-qualified for their role as class counsel in this litigation. Through skill and perseverance, they have ably represented their clients throughout the negotiation process as well as during hearings before this court. They have expressed the belief that the settlement in this case is fair, reasonable and adequate, and the court has no reason to doubt their judgment. Moreover, the court has no reason to believe that the Agreed Entry, or any aspect of it, is the product of collusion among or between class counsel, the defendants, any official or employee of the Indiana Department of Correction, or defense counsel.

The last factor calls for consideration of the stage of the proceedings and the amount of discovery completed. Although the parties commenced settlement discussions at an early stage of this litigation, class counsel have engaged in an extensive and thorough investigation of the background and facts pertinent to the claims which have been raised. That investigation included: a complete inspection of the classification records

of all prisoners who were confined at the MCC; a comprehensive inspection of all MCC policies, memoranda, orders, post orders, and like materials dealing with the treatment of prisoners and the interaction of staff with prisoners; discussions with a number of former and current MCC employees, regarding MCC practices and policies; discussions with experts in the fields of medicine, psychiatry, corrections, and prisoner classification; inspection of physical operations and facilities at the MCC; communications with the U.S. Environmental Protection Agency and State health and environmental authorities, as well as the collection of documentation regarding tests performed on drinking water at the MCC; taking several depositions of the individual prisoners engaged in a hunger strike; contacts and communications with several MCC prisoners during the ten months preceding the filing of this action, for the purpose of gathering information with respect to policies and practices at the MCC; and numerous consultations by class counsel with class members throughout the course of this litigation. In this instance, the court is confident that the discovery and investigation undertaken by class counsel gave them a clear insight into the facts underlying plaintiffs' claims, as well as the strengths and weaknesses of those claims.

Having reviewed the terms of the proposed Agreed Entry, as well as the parties' agreement concerning the disposition of state court claims, plaintiffs' memorandum in support of the class action settlement, the affidavits submitted by counsel for the class, and the statements in support and in opposition to the proposed settlement submitted by individual MCC inmates, the court finds that the settlement embodied in the Agreed Entry and the agreement concerning state court claims is lawful, fair, reasonable and adequate. Accordingly, it is **RECOMMENDED** that the Agreed Entry, as well as the parties' agreement regarding the state court claims, signed copies of which have been attached hereto, be in all respects approved.

**ANY OBJECTIONS to this report and recommendation must be filed with the Clerk of courts within ten (10) days of** receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner,* 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.,* 797 F.2d 538 (7th Cir.1986).

Dated this 5th day of January, 1994.