104 F.3d 362
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Aaron E. ISBY,[2] Plaintiff-Appellant,
v.
Charles E. WRIGHT, Herbert Newkirk,[3] James
Kimmel, Michael Scott, and Charles Ellar,
Defendants-Appellees.
Aaron E. ISBY, Plaintiff-Appellant,
v.
Shelly SCHIMIZZI, et al., Defendants-Appellees.
 No. 94-3291.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 12, 1996.[1]
Decided Dec. 12, 1996.
 
 Appeal from the United States District Court, for the Northern District of Indiana, South Bend Division, No. 3:91-CV-401 AS; Allen Sharp, Chief Judge.
 Before MANION, ROVNER and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff Aaron E. Isby, a prisoner at the Maximum Control Complex (MCC) in Westville, Indiana, filed two civil rights actions under 42 U.S.C. § 1983, challenging various policies and conditions of confinement at the MCC under the First, Fourth, Eighth, and Fourteenth Amendments. He was unsuccessful in both suits. We grant Isby's request to consolidate the two appeals; where the issues from these two appeals overlap, we treat them together.
 
 I. BACKGROUND
 
 2
 In appeal No. 94-3291,[4] the complaint challenged MCC policies and conditions of confinement under the Eighth and Fourteenth Amendments, attacking policies involving mail, body searches, legal photocopying, possession of postal stamps, making beds, monitoring telephone calls, and possession of reading materials. Isby sought both damages and injunctive relief. The district court entered summary judgment for defendants, various prison officials.
 
 
 3
 In appeal No. 94-3650,[5] Isby appeals from a summary judgment entered in favor of defendants, various prison officials and employees, in a civil rights case, 42 U.S.C. § 1983, challenging certain MCC prison policies relating to books and correspondence. The amended complaint alleges that policies and restrictions related to the receipt of and possession of books and correspondence caused him to "suffer severe mental and emotional distress while being subjected to sensory deprivation." The complaint asks for declaratory and injunctive relief, along with damages.
 
 
 4
 The district court entered summary judgment in favor of defendants, except for dismissing claims against defendants in their official capacities as protected under the doctrine of qualified immunity. As to the injunctive relief, the court found the claims were controlled by a prior class action. As to the damages claims, the court addressed the merits of each claim individually.
 
 II. DISCUSSION
 A. Standard of Review/Summary Judgment
 
 5
 Summary judgment is proper where the pleadings, depositions, affidavits, and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review the district court order granting summary judgment de novo, viewing all facts in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 B. Binding Effect of Previous Class Action
 
 6
 As detailed below, many of the claims raised by Isby in these two consolidated appeals challenge prison policies which have now been resolved in a prior class action in which Isby is a named plaintiff. The district court approved a consent decree in the class action, Taifa v. Bayh, 846 F.Supp. 723 (N.D.Ind.1994), and this court affirmed in Isby v. Bayh, 75 F.3d 1171 (7th Cir.1996). Plaintiff may not relitigate the same issues here. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 874 (1984); Martin v. Davies, 917 F.2d 336, 339-40 (7th Cir.1990); Crowder v. Lash, 687 F.2d 996, 1008-11 (7th Cir.1982); Fed.R.Civ.P. 23 (all members of class are bound by judgment entered in that action). We will, however, address claims of individual damages. See Serlin v. Arthur Anderson & Co., 3 F.3d 221, 223 (7th Cir.1993); Crowder v. Lash, 687 F.2d at 1008-09.
 
 C. First Amendment Claims
 
 7
 Prison policies impinging on inmates' First Amendment rights are valid if reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89-90 (1987). Thus, a prison policy limiting access to newspapers, periodicals, and books, will be given considerable deference and upheld as long as the policy is reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401 (1989); Bell v. Wolfish, 441 U.S. 520 (1979).
 
 1. Correspondence
 
 8
 The consent decree in the class action, Taifa v. Bayh, supra, resolves most of the challenges to correspondence-related policies at MCC, and we will not decide the same issues here, where Isby fails to show any individual injury which would not have been redressed in the class action consent decree. The consent decree provides that the MCC shall comply with Indiana and federal law concerning correspondence, including Indiana statutes which provide that legal mail may not be opened except "in the presence of the confined person for the purpose of examining the contents for contraband or prohibited property," and after the inspection, the correspondence "must be promptly delivered or transmitted without reading, censoring, copying, or further interfering" with the delivery to the inmate." (Consent decree, p. 18, par. 5, quoting Ind.Code. § 11-11-3-3.)
 
 
 9
 The complaint in No. 94-3291 alleges that defendants violated Isby's First Amendment rights by withholding, opening, and censoring outgoing "legal and personal mail." On June 25, 1991, defendant Ellar "withheld" Isby's "outgoing legal letter to open and censor for contraband." We agree with the district court's observation that "the plain and blunt fact is that the plaintiff Isby simply did not follow those [prison mail] regulations and wants to rewrite them," which we will not do.
 
 
 10
 The amended complaint in No. 94-3650 adds that on August 26, 1993, defendant Huckins gave Isby a "legal letter" from attorney Hamid Kashani, but the letter had already been opened. "Defendant Huckins told plaintiff that he did open plaintiff['s] attorney-client legal mail out of plaintiff['s] presence." Huckins states in his answers to interrogatories that the mail was opened accidentally in the presence of another inmate, but that he did not open the envelope or look at its contents until he was in Isby's presence. Isby offered the district court nothing to counter Huckins' sworn statement. Negligent opening of legal mail outside the inmate's presence does not support a claim under § 1983. Kincaid v. Vail, 969 F.2d 594, 602 (7th Cir.1992). The brief in 94-3650 argues that, while Huckins admits opening the mail by mistake, it can be "inferred" that Huckins read the mail because it "had been open for two days before it was actually delivered to Isby." (Appellant's Brief, p. 21) This speculation is insufficient to withstand the materials submitted by defendants on summary judgment.
 
 2. Periodicals and Other Written Materials
 
 11
 a. Retaliation
 
 
 12
 The complaint in No. 94-3291 alleges that defendants violated Isby's First Amendment rights when they confiscated, "in retaliation for filing grievance[s]," various "black-oriented newspapers and personal writing." On June 17, 1991, two guards were ordered by defendant Wright "to retaliate against me ... for filing grievances," and all of Isby's "revolutionary and nationalist newspapers were confiscated and personal writings." The district court stated that a "careful examination of the record in this case fails to demonstrate a violation of the constitutional values announced in Kincaid [v. Rusk, 670 F.2d 737 (7th Cir.1982) ]," in regard to the kinds of newspapers and magazines an inmate may keep. The district court added: "Further, with regard to [Kincaid ], when the conduct referred to by this plaintiff is set against the procedures with regard to newspapers and periodicals set out by Mr. Wright, there is a failure to establish a constitutional basis for those claims by this plaintiff." (9/16/94 Order, p. 7) We note further that the consent decree states that the MCC "will not prohibit mail based on its content unless the material is inflammatory and presents a demonstrable security threat to the institution." (p. 18, par. 2)
 
 
 13
 b. Possession of More than One Newspaper
 
 
 14
 The amended complaint in No. 94-3650 alleges that defendants violated Isby's First and Fourteenth Amendment rights when they refused to give him "incoming correspondence." He specifies that on February 11, 1993, Officer Payne refused to give him a new "incoming political newspaper" unless Isby turned in his old newspaper. While the class action consent decree in Taifa v. Bayh, supra, addresses various aspects of inmate correspondence procedures, it does not specifically discuss the policy of requiring inmates to exchange an old newspaper in his cell if he wants a new issue of the newspaper. The policy at issue here is reasonably supported by legitimate penological interests. Scott's affidavit indicates that the policy was adopted at the suggestion of the State Fire Marshal to prevent excess flammable materials in the cells. Isby argues that the policy is not rational because inmates are not allowed cigarettes or matches, and there are no electrical outlets in the cells. However, given the creative methods often used by inmates to destroy prison property, including starting fires in their cells, we will not second guess the prison administrators on this policy. Moreover, his First Amendment rights are not violated, as he suggests, since he is still given access to newspapers. Isby does not suggest any other actual injury he suffers when he is required to turn over one newspaper in order to receive another. See Lewis v. Casey, 116 S.Ct. 2174, 2180 (1996) (inmate must suffer "actual injury").
 
 
 15
 c. Restricted Possession of Reading Materials
 
 
 16
 The complaint in No. 94-3291 alleges that defendants violated Isby's First Amendment rights by "restricting the reading material accessible to prisoners." Isby complains only of the prison policies: permitting five paperback books and five magazines in a cell at one time; confiscating newspapers within 24 hours; and prohibiting hardbound books. The consent decree in Taifa v. Bayh, supra, includes extensive guidelines relating to reading materials. For example, prisoners are now allowed "25 books and/or magazines in his cell at one time," and hardback covers are to be removed only with the consent of the prisoner. (Consent Decree, pp. 20-21, para. 1-3) As we have stated, the policies resolved through the consent decree in the class action cannot be relitigated by Isby now.
 
 
 17
 d. Possession and Size of Books
 
 
 18
 Isby challenges in No. 94-3650 various MCC policies regarding the possession of hardcover books; books (including photocopied books[6]) not mailed from a publisher, book club or book store; and books over 1,000 pages in length. Cf. Bell v. Wolfish, 441 U.S. at 550-51 ("We conclude that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of MCC inmates"). As Isby concedes (Appellant's Brief, pp. 13-14), these policies were resolved by the consent decree in the class action. Taifa v. Bayh. For example, while the complaint in this action alleges that the 1,000-page policy "prevent[ed] the plaintiff from gaining access to his dictionary," the consent decree provides that dictionaries do not fall within the 1,000-page rule, and in any event he can have 1,000-page books cut in half. Isby also argues that the consent decree is defective because it does not mention "anything about political literature" and it is "obvious that books based on socialist, communist and other philosophical studies that MCC officials disagree with would be primary targets of this thousand page restriction." (Appellant's Brief, p. 14) As explained above, challenges to the consent decree in that class action may not be raised in a new lawsuit.
 
 
 19
 e. Restricted Photocopying
 
 
 20
 The complaint in No. 94-3291 alleges that defendants violated Isby's First Amendment rights by denying him "unlimited photocopying of legal documents." Isby complains of a rule instituted on June 24, 1991 requiring photocopy requests to be submitted on Fridays only, to be returned on Monday evenings, which policy "could result in a denial of plaintiff's present pro se civil complaint which is in the courts now." He has failed to cite a specific case where such denial has occurred. We also note that the consent decree in Taifa v. Bayh, supra, includes detailed guidelines for photocopying. For example: "Prisoners may request photocopies of legal materials on regular business days. The requested copies shall be provided to the prisoners no later than the next business day." (p. 38, para. 8)
 
 
 21
 f. Access to Courts
 
 
 22
 Isby raises in his appellate brief, and attempted to argue before the district court, a claim that defendants have wrongfully barred inmates' access to courts by forcing inmates to pay for mail sent to law schools and legal service organizations. Isby has not shown an actual injury affecting his right of access to the courts in regard to the filing or conduct of litigation in a specific case. Lewis v. Casey, 116 S.Ct. 2174, 2180 (1996); Bounds v. Smith, 430 U.S. 317, 821 (1977).
 
 
 23
 g. Receipt of Postal Stamps
 
 
 24
 The complaint in No. 94-3291 alleges that defendants violated Isby's First Amendment rights by "now allowing prisoners to receive postal stamps through the mail." The complaint does not state a claim, since no First Amendment policy is implicated, given the fact that the policy does not restrict inmates' correspondence in any way. Inmates may, for example, receive outside funds to be applied to their prison account, and use the funds to purchase postage stamps from the prison commissary. Moreover, the penological purpose of preventing inmates from possessing property used as currency is legitimate. See Bell v. Wolfish, supra, at 549, 551, 559. We also note that the consent decree in Taifa v. Bayh, supra, provides that "[n]o limit shall be placed on the number of stamps or envelopes a prisoner may purchase from the commissary or have in his cell...." (p. 18, para. 4)
 
 D. Fourth Amendment Claim
 Monitoring Telephone Calls
 
 25
 The complaint in No. 94-3291 alleges that defendants violated Isby's Fourth Amendment rights by "monitoring prisoners' phone calls without authorization from a court." Isby points to no specific instance relating to him or any other prisoner, and defendants deny that any monitoring ever occurred. In addition, the consent decree in Taifa v. Bayh, supra, provides that all telephone calls "shall be made on telephone lines which cannot be monitored internally by DOC and in areas where the prisoner's voice cannot be overheard." (p. 16, para. 2)
 
 E. Eighth Amendment Claims
 
 26
 To establish liability for deliberate indifference based on the conditions of confinement under the Eighth Amendment, an inmate must show that the condition in question caused a sufficiently serious harm or risk of harm and that prison officials knew of the existing harm or the risk of harm. Farmer v. Brennan, 114 S.Ct. 1970, 1977 (1994). Penal conditions "may not deprive inmates of the minimal civilized measure of life's necessities." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988).
 
 1. Consequence of Failing to Make Bed
 
 27
 The complaint in No. 94-3291 alleges that defendants violated Isby's Eighth Amendment rights by removing his bedding from the cell when he refused to make his bed as required by prison regulations. On June 14, 1991, at 8:45 a.m., guards removing the bedding from Isby's cell "for not making up his bed," and the bedding was not returned until 11:45 p.m., forcing him sleep "on [a] cold steel bed frame." He characterizes this as an "arbitrary" form of "punishment and harassment" which was "very provocative" and used "for some ulterior motive, which is in violation of plaintiff's Eight[h] Amendment rights." The prison policy is that beds must be made by 7:00 a.m. Wright submitted an affidavit explaining that an unmade bed can be used to hide weapons. The consent decree in Tafia v. Bayh, supra, provides that "[a]ll prisoners shall retain the bedding in their cells, unless they commit an infraction involving the bedding" and that the inmates may have extra blankets "providing the bed had been made pursuant to MCC rules." Isby cannot again litigate the bedding claim in this suit. Notably, he does not allege any damage suffered from sitting on a cold bed. Cf. Williams v. Scott, No. 3:94-CV-0064 AS (N.D.Ind. April 30, 1996), 1996 WL 277964 at * 5 (rejecting Eighth Amendment claim of MCC inmate where there was no evidence that removal of bedding caused inmate any harm, since bedding was returned at night and thus he was not deprived of bedding during normal sleeping hours).
 
 2. Body Searches
 
 28
 The complaint in No. 94-3291 alleges that defendants violated Isby's Eighth Amendment rights when, on June 15, 1991, they subjected him to a "dehumanizing body search" when he was "let out for recreation." In addition, Isby alleges that he received a "medical examination of genital[s]" on June 24, 1991, which was an "inhuman act." The officer alleged to have engaged in the June 15, 1991 search is not a defendant in this case. Moreover, even much more extensive searches are generally permitted, and Isby has offered nothing to indicate that his case is an exception. See, e.g., Bell v. Wolfish, 441 U.S. 520, 561 (1979); Del Raine v. Williford, 32 F.3d 1024 (7th Cir.1994).
 
 F. Rule to Show Cause
 
 29
 Our review of the 32 appeals Isby has filed in this court, along with untold numbers of actions filed in the district courts, require us to issue, as part of this order, a Rule to Show Cause why Isby should not be subject to restrictions on all future filings in this Circuit. See Verdone v. Circuit Court for Taylor County, 73 F.3d 669 (7th Cir.1995); Support Systems International, Inc. v. Mack, 45 F.3d 185 (7th Cir.1995); Homola v. McNamara, 59 F.3d 647 (7th Cir.1995).
 
 
 30
 Isby has repeatedly abandoned appeals in this court. See Verdone, 73 F.3d at 672 ("repeatedly abandoning his suits after draining enormous amounts of time and expense from the limited resources of both the courts and the named defendants"). He has also been compelled to voluntarily dismiss numerous appeals when the court has pointed out jurisdictional problems before considering the merits of the appeals.
 
 
 31
 While he was successful in one appeal, Isby v. Clark, No. 95-1739, --- F.3d ---- (7th Cir. Nov. 12, 1996), 1996 WL 656387[7], that success rested largely on the magistrate judge's failure to make adequate factual findings.
 
 
 32
 In addition, his general handling of the appeals shows a pattern of frivolousness and negligence. For example, one of the 32 appeals Isby filed was an interlocutory appeal from the denial of a preliminary injunction in yet another suit challenging conditions at the MCC. We found that Isby offered "only broad, vague statements referring to some unspecified harm that he might suffer when prison officials require him to be restrained or to wear a hockey mask" to prevent him from spitting on the guards, and that "[a]ny recompense due Isby can be satisfied at the conclusion of the civil rights case." Isby v. Wright, No. 94-2452 (7th Cir. June 19, 1996) (unpublished order), 1996 WL 343604.
 
 
 33
 In another appeal, where Isby challenged his written reprimand, class demotion, and loss of 45 days good time, imposed after he failed to get into a "cuff up" position, and tried to hit a guard with his fist, we found Isby had failed to pursue available administrative remedies. Isby v. Wright, No. 94-3978 (7th Cir. June 19, 1996) (unpublished order), 1996 WL 343607.
 
 
 34
 In Isby v. Wright, No. 93-2113 (7th Cir. May 9, 1994) (unpublished order, 1996 WL 176224, we affirmed summary judgment for defendants in a § 1983 suit where Isby, after ruining a mattress and then "provid[ing] no statement contesting the charge and fail[ing] to appear for the [disciplinary] hearing," complained when defendants froze his prison trust account until he paid $78 in restitution for the destroyed mattress. We not only found that the disciplinary proceeding satisfied due process, but added that as to a challenged discovery motion Isby offered nothing more than a "mere contention in the absence of any showing of prejudice"; and that Isby failed to comply with local rules "as directed by the [district] court." We further noted that in the same case we had previously dealt with Isby's premature appeal challenging the district court's dismissal of one defendant based on the absence of any allegation of sufficient personal involvement; yet in the present appeal Isby did not even bother to challenge the dismissal of that defendant.
 
 
 35
 We now give Isby notice that we propose to enter the following order:
 
 
 36
 Isby is prohibited from filing any lawsuit in any of the seven district courts in this Circuit, and prohibited from filing any appeals in this court, unless he files a "Motion Pursuant to Court Order Seeking Leave to File," attaching:
 
 
 37
 (1) a copy of the proposed paper to be filed;
 
 
 38
 (2) a copy of this order;
 
 
 39
 (3) a sworn affidavit by Isby certifying that the matters raised in the proposed filing are not frivolous and have not been raised by him in prior suits, and, if the proposed filing is a civil rights action, that he has complied with the requirements of the Prison Litigation Reform Act, Title VIII of Pub.L. No. 104-134, 110 Stat. 1321 (eff. April 26, 1996).
 
 
 40
 Direct criminal appeals are excepted from this order. Habeas corpus petitions are also an exception, but such actions will be subject to the restrictions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 100 Stat. 1214.
 
 
 41
 Isby is authorized to submit to this court, no earlier than two years from the date of this order, a motion to modify or rescind this order.
 
 
 42
 If Isby disregards the order we enter today, the receiving court may consider contempt charges against him.
 
 
 43
 Pursuant to Fed.R.App.P. 38 and Cir.R. 38, Isby has fourteen days from the filing date of this order to file with this court his written reasons opposing the above proposed order. Failure to respond shall result in automatic imposition of the proposed sanction as detailed in the above proposed order.
 
 III. CONCLUSION
 
 44
 The judgments of the district court are AFFIRMED.
 
 
 45
 It is ORDERED that Isby has fourteen days from the date of entry of this order to respond to the proposed sanctions order.
 
 
 
 [2]
 Initially Kataza Taifa was also a plaintiff, but he was subsequently dismissed from the case and is not a party to this appeal
 
 
 [3]
 Newkirk is substituted for Wright on the official capacity claim, pursuant to Fed.R.App.P. 43(c)(1). Wright remains as a defendant as to the individual capacity claim only
 
 
 [1]
 After preliminary examination of the briefs and the records, the court has concluded that oral argument is unnecessary. The appeals are submitted on the briefs and the records. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [4]
 District court No. 3:91-CV-401 AS
 
 
 [5]
 District court No. 3:93-CV-123 RM
 
 
 [6]
 The complaint alleges that on September 13, 1993, Isby was given a confiscation slip informing him that incoming mail contained a "photocopied book" which was confiscated
 
 
 [7]
 That civil rights case involved conditions of confinement in Special Management Unit at the Indiana State Prison. We remanded for further factual findings as to an Eighth Amendment claim. We prefaced our analysis, however, with a description of Isby's history ("it is helpful to know a little bit about Mr. Isby"), including the fact that at that time he had been sentenced to disciplinary segregation time until at least the year 2019, for conduct such as stabbing one correctional officer in the neck, another in the head, and stabbing an inmate in the chest