70 F.3d 1144
 Willie T. HAYES, Plaintiff-Appellant,
v.
Major MARRIOTT; Major Soares; Perry Roeker; Mr. Gaskil;
Richard Mar, Assistant Superintendent; and the
members of the special Operations
Response Team of January 24,
1991, Defendants-Appellees.
 No. 93-1181.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 20, 1995.
 
 Willie T. Hayes, Fremont Correctional Facility, pro se.
 Larry D. Tannenbaum, Office of the Attorney General, Denver, Colorado, for Defendants-Appellees.
 Before SEYMOUR, Chief Judge, McKAY, and HENRY, Circuit Judges.
 HENRY, Circuit Judge.
 
 
 1
 Plaintiff-appellant Willie T. Hayes appeals the district court's dismissal of his complaint alleging that state prison officials violated his Fourth, Eighth, and Fourteenth Amendment rights during a January 1991 search of inmates at the Arkansas Valley Correctional Facility. Because the record does not support the grant of summary judgment against Mr. Hayes on his Fourth Amendment claim, we reverse and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 In his complaint, Mr. Hayes alleges that in January 1991 he was subjected to an unreasonable body cavity search that was videotaped by prison officials. He maintains that all inmates in the facility were searched in common areas in the presence of female corrections officers as well as "several nonessential personnel" such as case managers and secretaries. Rec. doc. 3, at 4. Mr. Hayes's complaint describes the search in some detail: "I was required to open my mouth while a flashlight was shone waggle my tongue pull my cheeks out frisk my hair, pull my ears and lift my testicles. I was required to turn around lift my feet bend over and spread my buttocks while 100 people watched." Id. The complaint also alleges that prison officials improperly removed curtains from bathrooms, allowing inmates to be easily observed by female officers.
 
 
 3
 Mr. Hayes's complaint asserts that the body cavity search and the removal of bathroom curtains violated his rights under the Fourth, Eighth, and Fourteenth Amendments. The complaint names various prison officials as defendants and seeks declaratory, injunctive, and monetary relief under 42 U.S.C. Sec. 1983.
 
 
 4
 Pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir.1978) (en banc) (per curiam), the district court directed the defendant prison officials to file a report responding to Mr. Hayes's allegations. After receiving the Martinez report, the court referred the case to a magistrate judge, who recommended dismissal of all of Mr. Hayes's claims. The district court agreed with the magistrate's recommendations. The court dismissed the Eighth and Fourteenth Amendment claims without prejudice, noting that there was a continuing class action suit addressing conditions of confinement at the Arkansas Valley Correctional Facility, see Rec. doc. 29, at 1 (citing Arguello v. Romer, No. 88-C-1335 (D.Colo. May 6, 1991)) (granting class certification), and that Mr. Hayes should file a motion to intervene in the Arguello case if he wanted to pursue those claims.[1] As to Mr. Hayes's Fourth Amendment claim, the district court adopted the magistrate's recommendations and dismissed the claim with prejudice.[2]
 
 II. DISCUSSION
 A. Standard of Review
 
 5
 On appeal, Mr. Hayes challenges the district court's dismissal of his Fourth Amendment claim regarding the January 1991 search.[3] Initially, we note that in reviewing Mr. Hayes's allegations, the magistrate judge relied on factual assertions in the Martinez report submitted by the defendant prison officials. See Rec. doc. 20, at 4 (discussing the reasons given by prison officials for videotaping the search and the fact that only the warden had viewed the videotapes). Several of those assertions were controverted by allegations in Mr. Hayes's verified complaint. As the magistrate judge considered matters outside the scope of the pleadings, we must treat the dismissal of Mr. Hayes's Fourth Amendment claim as a grant of summary judgment to the defendant prison officials. See Mosier v. Maynard, 937 F.2d 1521, 1525 (10th Cir.1991); Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir.1991).
 
 
 6
 We review the grant of summary judgment de novo, applying the same standard the district court should apply under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We must view the record in the light most favorable to the party opposing summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 7
 These rules are applicable in determining whether a Martinez report establishes that prison officials are entitled to summary judgment: "A Martinez report is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." Hall, 935 F.2d at 1111. "The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." Id.
 
 B. Prisoner Searches
 
 8
 As the district court noted, the Fourth Amendment does not establish a right to privacy in prisoners' cells. Hudson v. Palmer, 468 U.S. 517, 522-30, 104 S.Ct. 3194, 3197-202, 82 L.Ed.2d 393 (1984). However, prisoners do retain a limited constitutional right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex. See Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir.1993); Levoy v. Mills, 788 F.2d 1437, 1439 (10th Cir.1986); Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir.1982) (per curiam); see also Canedy v. Boardman, 16 F.3d 183, 185 (7th Cir.1994) (" '[O]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy.' ") (quoting 3 Privacy Law and Practice p 25.02 (George B. Trubow ed., (1991)).
 
 
 9
 Nevertheless, prisoners' constitutional rights must be exercised with due regard for the requirements of prison administration. Turner v. Safley, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259-60, 96 L.Ed.2d 64 (1987). Courts must give great deference to the decisions of prison officials concerning the management of correctional facilities. Id. at 85-86, 107 S.Ct. at 2259-60. In Turner, the Supreme Court established a rational relationship test for assessing the constitutionality of prison regulations and practices. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89, 107 S.Ct. at 2261. In applying this test, courts should consider the following factors: (1) whether there is a valid, rational connection between the prison regulation or practice and a legitimate governmental interest; (2) whether the regulation or practice allows inmates an alternative means of exercising the subject constitutional right; (3) the impact of accommodation of the asserted right on guards, other inmates, and the allocation of resources generally; and (4) the absence of ready alternatives to the regulation or practice. Id. at 89-91, 107 S.Ct. at 2261-63.
 
 
 10
 The Court has also discussed the factors that must be considered in assessing the reasonableness of prisoner searches:
 
 
 11
 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
 
 
 12
 Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979).
 
 
 13
 We have applied these principles to prisoner searches in a number of cases. See, e.g., Dunn v. White, 880 F.2d 1188, 1190-97 (10th Cir.1989) (holding that nonconsensual blood test does not violate the Fourth Amendment), cert. denied, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990); Levoy, 788 F.2d at 1439 (10th Cir.1986) ("Since the complaint alleges that Mr. Levoy was subjected to a body cavity search without any justification whatsoever, it is possible that Mr. Levoy can make a rational argument on the law and facts to support his Fourth Amendment claim."); Cumbey, 684 F.2d at 714 (10th Cir.1982) ("[T]he plaintiff's statement that the male inmates were subject to a 'certain amount of viewing' by female guards does not necessarily fall short of a cognizable constitutional claim.").
 
 
 14
 In this case, the district court and the magistrate judge concluded that a "single or minimal viewing" of a prisoner by prison officials of the opposite sex is insufficient as a matter of law to constitute a Fourth Amendment violation. Rec. doc. 20, at 4. That conclusion is not supported by our prior decisions. Although we have stated that the frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities, and showering is an important factor in assessing the constitutionality of prison practices, see Cumbey, 684 F.2d at 714, we have also concluded that a prisoner's right to privacy may be violated by a single search, see Levoy, 788 F.2d at 1439. Here, Mr. Hayes has alleged in a sworn complaint that he was subjected to a body cavity search in the presence of over 100 people, including female secretaries and case managers from other buildings. Rec. doc. 3, at 3. We cannot conclude as a matter of law that Mr. Hayes's Fourth Amendment rights were not violated, simply from the fact that this search occurred only one time.
 
 
 15
 To be sure, the defendant prison officials provided an explanation of the January 1991 search in the Martinez report. The report begins with an unsworn statement by an administrative officer for the Arkansas Valley Correctional Facility. She explains that the January 1991 search was conducted pursuant to a Colorado Department of Corrections policy "to conduct complete, thorough searches of all facilities on a regular, unscheduled basis." Rec. doc. 12, at 1. The administrative officer further states that "[d]ue to the enormity of such a search, regular facility staff could not handle this operation alone," id., and that various Department of Corrections officials from outside the Arkansas Valley Correctional Facility assisted in the search. As to the use of female staff, the administrative officer explains:
 
 
 16
 There is no particular DOC policy relating to use of female staff during strip searches. As a matter of courtesy to the inmate population, male staff members are used whenever possible. There is no indication any female staff members conducted a strip search during the dates in question. Although every effort was made to reduce the number of female staff during the search, females are an essential part of our staffing. All posts still had to be covered and females did view parts of the search while conducting their normal duties or observation duties so male staff could conduct the searches. There was no justifiable reason to totally exclude female staff from this required function. Additionally, the total absence of female staff would have alerted inmates to an impending search.
 
 
 17
 Id. at 2.
 
 
 18
 For several reasons, we conclude that information provided by prison officials in the Martinez report does not warrant the grant of summary judgment to the defendants. First, the statements of the administrative officer are not sworn, and the Martinez report does not include affidavits based on personal knowledge of the January 1991 searches. See Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir.1988) (Unsworn affidavits do not raise factual issues precluding summary judgment.); Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir.1985) (Unsworn affidavits do not satisfy the evidentiary requirements of Fed.R.Civ.P. 56(e).), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). In contrast, Mr. Hayes's sworn complaint, which may be treated as an affidavit, see Hall, 935 F.2d at 1111, alleges that the January 1991 search was conducted by female staff members and various "nonessential personnel" and was therefore unnecessarily intrusive. Rec. doc. 3, at 4. In light of the allegations of Mr. Hayes's verified complaint, the unsworn statements in the Martinez are insufficient to establish that the January 1991 search was reasonable. See Fed.R.Civ.P. 56(e); Mosier, 937 F.2d at 1524-25.
 
 
 19
 Second, even if the administrative officer's statements had been sworn and therefore constituted proper summary judgment evidence, her explanations of the January 1991 search would still be insufficient to warrant summary judgment for the defendant prison officials. Although the Fourth Amendment does not require the complete exclusion of members of the opposite sex from areas in which searches are conducted, see Canedy, 16 F.3d at 187; Michenfelder v. Sumner, 860 F.2d 328, 333-34 (9th Cir.1988), and although the security concerns articulated by prison officials are entitled to great deference, see Turner, 482 U.S. at 85, 107 S.Ct. at 2259, the administrative officer's statements in the Martinez report do not discuss several important issues regarding the January 1991 search.
 
 
 20
 In particular, the administrative officer's statement that "every effort was made to reduce the number of female staff during the search," see Rec. doc. 12, at 2, does not explain which female staff members were allowed to view the search, what their functions were, and why these functions were important to either the search itself or to other prison functions. Additionally, the Martinez report provides no explanation of the location in which the search occurred and the reasons for conducting the search there.
 
 
 21
 Finally, the prison officials have chosen not to file a brief in this appeal. As a result--other than the general statements in the Martinez report--the record contains no discussion of the prison officials' position on these issues. Given the limited information in the record, summary judgment for the defendant-appellee prison officials is not warranted. Cf. Lucero v. Gunter, 17 F.3d 1347, 1350 (10th Cir.1994) (remanding prisoner's claim that urinalysis testing violated the Fourth Amendment because the record was insufficient to determine whether the testing was reasonable); Swift v. Lewis, 901 F.2d 730, 731-32 (9th Cir.1990) (concluding that summary judgment was not warranted as to reasonableness of prison grooming code because prison officials had failed to produce evidence supporting the asserted justifications for the code).[4]
 
 III. CONCLUSION
 
 22
 Accordingly, we AFFIRM the district court's dismissal without prejudice of Mr. Hayes's Eighth and Fourteenth Amendment claims. We REVERSE the district court's dismissal with prejudice of Mr. Hayes's Fourth Amendment claim and REMAND this claim to the district court for further proceedings consistent with this opinion.[5]
 
 
 23
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 The Arguello case was eventually settled. See Diaz v. Romer, 801 F.Supp. 405 (D.Colo.1992), aff'd, 9 F.3d 116 (10th Cir.1993)
 
 
 [2]
 The magistrate judge had concluded that "[a] single or minimal viewing [of a search] by the opposite sex does not violate Plaintiff's right of privacy," Rec. doc. 20, at 4, and that the videotaping of the search was reasonable. The magistrate judge had also determined that Mr. Hayes's allegations regarding the removal of the bathroom curtains were insufficient to state a Fourth Amendment claim
 
 
 [3]
 In his appellate brief, Mr. Hayes does not challenge the district court's conclusion that the removal of the bathroom curtains did not violate his right to privacy under the Fourth Amendment. Accordingly, we do not examine that issue here
 
 
 [4]
 Mr. Hayes also argues that the district court erred in failing to consider his claims that the search violated the Eighth and Fourteenth Amendments. We find no error in the district court's conclusion that these claims should have been litigated in the class action suit regarding conditions of confinement
 In addition, we note that our decision does not preclude the defendant prison officials from filing a properly supported motion for summary judgment in the district court proceedings regarding Mr. Hayes's Fourth Amendment claim.
 
 
 [5]
 Mr. Hayes has also challenged the district court's conclusion that the videotaping of the January 1991 search and the alleged policy of allowing unlimited, unmonitored viewing of the tapes did not violate his Fourth Amendment rights
 In the Martinez report, the administrative officer of the Arkansas Valley Correctional Facility stated that the videotape of the search had been viewed only by the warden and by the administrative staff during the investigation of complaints. Rec. doc. 12, at 2. She also noted that "[r]eview of this tape does not positively identify any inmate on tape as Willie Hayes, but gives an overall picture of what occurred." Id.
 We certainly agree with the prison officials that legitimate security interests, as well as other interests, may support the videotaping of prisoner searches. See Scott v. Gier, No. 93-35629, 1994 WL 283621 (9th Cir. June 24, 1994) (affirming grant of summary judgment to prison officials who videotaped search). However, because the administrative officer's statement does not satisfy the requirements of Fed.R.Civ.P. 56(e) and because the Martinez report does not contain sworn affidavits from prison officials with personal knowledge of either the videotaping of the search or the policy of access to the resulting videotape, further development of the record is necessary.