**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2001**

**PATRICK FISHER**
**Clerk**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ARTHUR JAMES MOORE,

Plaintiff-Appellant,

v.

WARDEN ATHERTON and MAJOR
REED, Program Manager,

Defendants-Appellees.

No. 00-1510
(D.C. No. 00-Z-1650)
(Colorado)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, **McKAY**, and **BRORBY**, Circuit Judges.

Arthur James Moore, a prisoner in the Colorado State Prison (CSP), filed

this suit *pro se* under 42 U.S.C. § 1983 against CSP officials alleging various

constitutional violations and seeking money damages and injunctive relief. The

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore submitted without oral argument. This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, or collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

district court dismissed all his claims as legally frivolous pursuant to 28 U.S.C. section 1915A(b)(1). Mr. Moore appeals and we affirm.

This court construes *pro se* complaints liberally. *See Hunt v.* Uphoff, 199 F.3d 1220, 1223 (10th Cir. 1999); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). We extend this liberal construction principle to *pro se* appellate filing as well. *See Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998), *cert. denied*, 526 U.S. 1052 (1999). While this court has not yet determined whether a dismissal pursuant to § 1915A on the ground that the complaint is legally frivolous is reviewed *de novo* or for an abuse of discretion, *Plunk v. Givens*, 234 F.3d 1128, 1130 (10th Cir. 2000), our result would be the same under either standard. We present the facts of the case only as they are relevant to individual claims, discussed below.

First, as part of an inmate's incarceration, the CSP expects participation in a "life skills" program. Once in the program, inmates are expected to discuss the crimes they committed and for which they are serving time. The "participation agreement," signed by Mr. Moore, states that prisoners agree to answer every question posed to them. For reasons unstated in his complaint, Mr. Moore chose not to answer questions related to his past crimes and was thus placed on restricted privileges. This included the removal of a television set from his cell. Mr. Moore claims that this discipline violated his Fifth Amendment guarantee

against double jeopardy.[1]

According to the Fifth Amendment, no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The double jeopardy clause has been interpreted to prohibit prosecution for the same offense after acquittal, prosecution for the same offense after a conviction, and multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794 (1989). Mr. Moore's complaint appears to make the argument that placing him on restricted privileges for refusing to discuss his crime in the life skills class constitutes a multiple punishment as discussed in *Pearce*. However, subsequent decisions have clarified that jeopardy attaches only to proceedings which are "essentially criminal" in nature. *Breed v. Jones*, 421 U.S. 519, 528 (1975). "Prison disciplinary hearings are not part of a criminal prosecution, and therefore do not implicate double jeopardy concerns." *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994) (citation omitted). The disciplinary process instituted here falls into the same category. Mr. Moore's claims on this question are therefore without merit.

---

[1]Mr. Moore subsequently participated in the life skills program and successfully completed it.

Mr. Moore also vaguely asserts that requiring him to answer questions about the crimes he committed violated his Fifth Amendment right not to incriminate himself. Even assuming Mr. Moore could somehow be incriminated by discussing his past crimes, *see Lile v. McCune*, 224 F.3d 1175, 1179 (10th Cir. 2000), *cert. granted*, 121 S. Ct. 1955 (2001), we are not persuaded the loss of a personal television set amounts to the degree of punishment required to establish compulsion under the Fifth Amendment, *see id.* at 1180-82, 1185-87.

Second, Mr. Moore complains that his rights have been violated because the prison chaplain prays with inmates at their cell doors instead of in a private room. Because he is trying to become a Muslim and does not wish to hear these prayers, he argues that being forced to hear them infringes on his rights. Construed liberally, his complaint appears to raise a free exercise claim under the First Amendment.[2] In analyzing a free exercise claim we first determine whether government action creates a burden on the exercise of a person's religion. "(I)t is necessary in a free exercise case to show the coercive effect of the enactment as it operates against . . . the practice of (their) religion." *Badoni v. Higginson*, 638 F.2d 172, 176 (10th Cir. 1980) (quoting *School Dist. of Abington v. Schempp*, 374 U.S. 203 (1963)), *cert. denied*, 452 U.S. 954 (1981). In this case, Mr. Moore has

---

[2] Even liberally construed, Mr. Moore does not make a cognizable establishment clause First Amendment claim.

-4-

not made any argument as to how hearing Christian prayers burdens his own exercise of his religious beliefs. As to this issue, his complaint fails to state a cognizable claim.

Third, Mr. Moore complains that his privacy rights have been violated because female prison staff are allowed to see him in his cell while he is using the toilet. Circuit precedent recognizes that prisoners retain a limited constitutional right to bodily privacy, "particularly as to searches viewed or conducted by members of the opposite sex." *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995). According to our decision in *Hayes*, the frequency with which prison guards watch inmates of the opposite sex undressing, using toilet facilities, and showering "is an important factor in assessing the constitutionality of prison practices." *Id.* at 1147 (*citing Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) (per curiam)). Mr. Moore has not provided us with the factual assertions needed to assess this factor, however, and we must therefore dismiss his contention for failure to state a claim.[3]

Finally, Mr. Moore alleges that his rights were violated because prison officials did not notify prisoners of a change in standard drug testing procedure

---

[3] We agree with the district court in its further holding that the claim fails because it does not assert a connection between the named defendants and the alleged violation of rights, an essential allegation in a civil rights case. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).

when they switched from a urine-sample based test to a drug "patch" test. When he refused to comply with the new test, Mr. Moore was sanctioned. Even liberally construed, it is not clear from Mr. Moore's complaint what constitutional right he alleges was violated. This claim, too, was properly dismissed.

We **AFFIRM** the judgment of the district court.

ENTERED FOR THE COURT


Stephanie K. Seymour
Circuit Judge