**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LARRY ALLEN THOMPSON,

    Plaintiff - Appellant,

v.

JASON LENGERICH, Warden, Buena
Vista Corr. Fac.; JENNIFER HANSEN,
BVCF Security Svc. Captain; WILLIAM
CATTELL, BVCF East Unit Supervisor,

    Defendants - Appellees.

No. 18-1257
(D.C. No. 1:18-CV-00588-LTB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Larry Allen Thompson, a Colorado inmate proceeding pro se, appeals from the

district court's determination on initial screening that his 42 U.S.C. § 1983

conditions-of-confinement claims are legally frivolous. Exercising jurisdiction under

28 U.S.C. § 1291, we affirm in part and reverse in part, and we remand for further

proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Thompson is incarcerated in Colorado Department of Corrections' (CDOC) Buena Vista Correctional Facility (BVCF). His complaint arises from two conditions of his confinement at BVCF, which he states is one of Colorado's oldest prisons.

First, BVCF's lower East Unit has communal showers with no walls or privacy partitions. As a result of childhood abuse, Thompson has been diagnosed with Post-Traumatic Stress Syndrome/Disorder (PTSS/D) and cannot shower with other male inmates, many of whom are sex offenders. CDOC's Administrative Regulation (A.R.) #100-40, passed to implement the Prison Rape Elimination Act, 34 U.S.C. §§ 30301-30309, and its accompanying regulations, *see* 28 C.F.R. Pt. 115, requires prisons to allow inmates who self-identify as transgender or intersex the opportunity to shower separately from other offenders. The federal regulations and A.R. #100-40 do not provide for private showers for other inmates such as Thompson who have special needs.

On September 16 or 17, 2017, Thompson was notified that he was being moved to the lower East Unit. He spoke with defendant William Cattell, the East Unit Supervisor, about his PTSS/D and his concerns about the communal showers. Cattell participated in Thompson's transfer and denied his grievance regarding the communal showers, stating that he could have a private shower if he identified as transgender or intersex.

Thompson moved to the lower East Unit on September 19. That day, he declared a "Mental Health Emergency." Defendant Jennifer Hansen, a

2

Custody/Control Manager, confronted Thompson "about what is, and/or is not considered by the administration to be a mental health emergency or issue." R. at 58. She "informed [Thompson] in no uncertain terms that [his] 'safety concerns' were 'irrelevant,' and the fact that [he] '. . . doesn't want to shower with other men is not my (her) problem!'" *Id.*

Thompson elected not to shower communally, and staff did not force him to shower, so he did not shower for approximately 25 days.[1] During this time, defendant Jason Lengerich, BVCF's warden, communicated with Thompson's wife, stating that Thompson would not be granted a private shower because he did not self-report as being transgender or intersex. The standoff ended when Travis Trani, CDOC's Director of Prison Operations, directed Lengerich to allow Thompson to shower privately. Thompson claims that the BVCF shower conditions and policies violate his rights under the Fourth, Eighth, and Fourteenth Amendments.

Second, Thompson alleges BVCF is overcrowded and understaffed. He asserts that the cells were intended for single occupancy but are double-bunked. And he alleges the cells are insufficient for even a single occupant. Specifically, he states that although the American Correctional Association (ACA) recommends 25 square feet of unencumbered square feet per occupant, his cell has only 21.5 total square feet of unencumbered space, shared by two men for 18 to 24 hours per day. Also,

---

[1] Thompson states that he did not shower for 19 days, but the amended complaint alleges that he moved to the lower East Unit on September 19 and finally was allowed to shower privately on October 14, which is a period of 25 days.

3

inmates are subject to multi-day lockdowns, including an 11-day lockdown in March 2018 when inmates were ill with the flu and no cleaning supplies were provided. Further, he states that understaffing cuts two ways: inmates are kept in their cells more, but when they are out of their cells, they are in greater danger from each other. Thompson claims that these conditions violate his rights under the Eighth and Fourteenth Amendments.

Thompson sued Lengerich, Hansen, and Cattell in both their official and their individual capacities. The magistrate judge identified several deficiencies in Thompson's original complaint and directed him to file an amended complaint. Upon screening Thompson's amended complaint under 28 U.S.C. § 1915A and D.C.Colo.L.CivR. 8.1(b)(3), the district court dismissed all of his claims as legally frivolous. Thompson appeals.

## DISCUSSION

Our review is de novo because the district court based its frivolousness determination on questions of law. *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006). "[A] complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolous claims include those "based on an indisputably meritless legal theory" or "describing fantastic or delusional scenarios." *Id.* at 327-28. But "frivolousness . . . refers to a more limited set of claims than does [Fed. R. Civ. P.] 12(b)(6)[.]" *Id.* at 329. Accordingly, a complaint may fail to state a claim upon which relief may be granted, yet not necessarily be frivolous. *See id.* at 331. "A pro se litigant's pleadings are to be

4

construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## I. Fourth Amendment Claim

Thompson claims that requiring him to use communal showers violates his Fourth Amendment rights to bodily privacy and security. The Fourth Amendment, however, protects against unreasonable *searches* and *seizures*. While many of our cases regarding prisoners' bodily privacy arise from strip searches, *see, e.g.*, *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002); *Hayes v. Marriott*, 70 F.3d 1144, 1146-47 (10th Cir. 1995), thus implicating the Fourth Amendment, Thompson's case involves neither a search nor a seizure. Accordingly, his allegations more properly invite analysis under other constitutional provisions: personal security under the Eighth Amendment, *see Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980) (recognizing under the Eighth Amendment that "an inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates"), and bodily privacy under the Fourteenth Amendment, *see Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982) (per curiam) (citing, in non-search prison context, Fourteenth Amendment precedent regarding inmate bodily privacy). Accordingly, we affirm the dismissal of the Fourth Amendment claim and instead consider the allegations under the Eighth and Fourteenth Amendments.

## II. Eighth Amendment Claims

Thompson seeks to pursue Eighth Amendment claims based on both the shower conditions and BVCF's being overcrowded and understaffed.

5

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "Although prison officials have broad administrative and discretionary authority to manage and control prisons, they must provide humane conditions of confinement guided by contemporary standards of decency." *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (citation and internal quotation marks omitted).

There are two elements to an Eighth Amendment conditions-of-confinement claim. "First, the alleged injury or deprivation must be sufficiently serious. The official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Tafoya*, 516 F.3d at 916 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Second, . . . the prison official must have a sufficiently culpable state of mind to violate the constitutional standard. The standard of culpability necessary to an Eighth Amendment violation is one of deliberate indifference." *Id.* "'[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . .'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

A.      Shower Conditions

Thompson asserts that requiring him to use communal showers violates his rights to sanitary conditions, treatment for his diagnosed mental condition, and

6

personal safety. The district court held that the amended complaint had failed to adequately allege both the objective and subjective elements of an Eighth Amendment claim. It held that being deprived of a shower for a period of a few weeks was not an extreme deprivation, and that Thompson had failed to allege that the defendants acted with deliberate indifference to his health and safety, given that they did not force him to take a communal shower.

The allegations are that the BVCF communal showers carry significant mental concerns for Thompson, a survivor of childhood abuse who has been diagnosed with PTSS/D and cannot shower with other men. It is a reasonable inference from the allegations that by transferring Thompson to the lower East Unit, which has only communal showers, and then by refusing to provide him the opportunity to shower privately until they were ordered to do so, the defendants essentially presented Thompson with a Hobson's choice between hygiene/sanitation, on the one hand, and personal safety and/or care for his diagnosed PTSS/D, on the other. Either way, Thompson would be deprived of humane conditions of confinement. These allegations are not legally frivolous.

Thompson further alleges, however, that after 25 days, he was allowed to begin showering privately. Thus, by the time he commenced his suit, Thompson was no longer being subjected to the Hobson's choice of which he complains. In these circumstances, Thompson has failed to allege sufficient facts to establish standing to sue defendants in their official capacities.

7

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (brackets and internal quotation marks omitted). "[W]e raise the issue *sua sponte* because it involves the court's power to entertain the suit." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (brackets and internal quotation marks omitted).

"Standing is determined as of the time the action is brought." *Id.* (internal quotation marks omitted). "To establish Article III standing, the plaintiff bears the burden of demonstrating the following three elements: (1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury." *Id.* "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement . . . ." *Steel Co.*, 523 U.S. at 103-04 (footnote omitted). The relevant elements here are injury in fact and redressability.

"The 'injury in fact' requirement differs depending on whether the plaintiff seeks prospective or retrospective relief." *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) (internal quotation marks omitted). With regard to defendants in their official capacities, Thompson may seek only injunctive relief. *See Brown v. Buhman*, 822 F.3d 1151, 1162 n.10

8

(10th Cir. 2016). "When prospective relief—such as an injunction—is sought, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Colo. Cross-Disability Coal*., 765 F.3d at 1211 (internal quotation marks omitted). But Thompson's shower allegations fail to demonstrate that he is suffering a continuing injury or is under a real and immediate threat of being injured in the future. To the contrary, he has been allowed private showers since October 2017, well before he filed this litigation. Thompson thus has failed to establish sufficient injury in fact to seek prospective relief with regard to his shower allegations.

A lack of a continuing violation also precludes showing redressability. To satisfy this element, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). In *Steel Co.*, where the defendant's conduct had ceased before the filing of the complaint, the Supreme Court held:

> If respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm. But there is no such allegation here—and on the facts of the case, there seems no basis for it. Nothing supports the requested injunctive relief except respondent's generalized interest in deterrence, which is insufficient for purposes of Article III.

523 U.S. at 108-09. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Id.* at 109 (ellipsis and internal quotation marks omitted). In light of the rule stated in *Steel Co.*, Thompson's past exposure to

9

communal showers does not in itself show a present case or controversy regarding injunctive relief.

This standing problem with regard to official-capacity claims, however, does not preclude Thompson from proceeding with his individual-capacity claims. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). Unlike the official-capacity claims, Thompson is not limited to injunctive relief with regard to the individual-capacity claims. And while 42 U.S.C. § 1997e(e) may foreclose an award of compensatory damages, he may still recover nominal and punitive damages from defendants in their individual capacities. *See Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001).

The amended complaint alleges that the defendants had actual knowledge that Thompson's PTSS/D precluded him from taking communal showers and personally participated in transferring Thompson to the lower East Unit and in denying his requests for private showers. Moreover, a factfinder "is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Tafoya*, 516 F.3d at 916. The attachment to Thompson's complaint, a statement under penalty of perjury from another inmate, supports an inference that the BVCF communal shower conditions are well-known to staff. In short, Thompson's allegations regarding the defendants' personal knowledge and participation also are

10

sufficient to rise above the level of a legally frivolous Eighth Amendment claim, with regard to his allegations against defendants in their individual capacities.

**B.     Overcrowding and Understaffing**

Thompson further asserts Eighth Amendment violations from BVCF being overcrowded and understaffed. The district court held this claim was frivolous because an allegation that cell size fails to meet recommended standards does not demonstrate a constitutional violation, and Thompson's allegations of being subjected to an 11-day lockdown in March 2018 due to a flu epidemic does not amount to intolerable conditions.

We again respectfully disagree with the district court's analysis. As the district court noted, there is no per se Eighth Amendment prohibition on double-celling. *See Rhodes v. Chapman*, 452 U.S. 337, 348-49 (1981). But that does not mean that an inmate cannot complain about overcrowding. *Rhodes* considered, and ultimately rested on, the district court's findings of fact regarding the plaintiffs' particular circumstances. *Id.* at 347-48.

The conditions alleged in the amended complaint are worse than the conditions *Rhodes* upheld as constitutional. Thompson's cell allegedly is 54 square feet (with only 21.5 square feet of unencumbered space), while the cells in *Rhodes* were 63 square feet, *id.* at 341. And Thompson alleges that the amount of unencumbered space fails to comply with current recommended ACA standards even for one inmate, let alone two. Even though the ACA standards do not themselves establish whether conditions are constitutional, they may be relevant to determining the constitutional

11

claim. *See Battle v. Anderson*, 564 F.2d 388, 395, 401 (10th Cir. 1977) (upholding district court's adoption of American Public Health Association standards calling for 60 square feet per cell). Further, Thompson states that he generally is allowed out of his cell for only 4 to 4.5 hours per day, whereas the *Rhodes* inmates had access to a day room for 15 hours per day, *see* 452 U.S. at 341. Thompson also is subject to multi-day lockdowns, which, combined with the small size of his cell, conceivably could deprive him of the ability to exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise[.]"); *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). In sum, the allegations regarding overcrowding are not legally frivolous.

Further, the district court did not address Thompson's allegations that the prison is understaffed, increasing the danger to inmates. In addition to stating that he is forced to spend more time in his inadequate cell space because of staffing levels, Thompson claims that understaffing causes him to be less safe when he is among other inmates. For example, he avers that staff responses to inmate fights have been delayed, leaving inmates injured. This circuit has stated that "an inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates," and that "[v]iolence and illegal activity between inmates at Old

12

Max is further facilitated by the inadequacy of the staffing levels." *Ramos*, 639 F.2d at 572, 573. Accordingly, Thompson's allegations that understaffing contributes to a violation of his Eighth Amendment rights are not legally frivolous.

For these reasons, we reverse the dismissal of this Eighth Amendment claim, but only as to defendant Lengerich. It is reasonable at this stage of the litigation to infer that as BVCF's warden, he has actual knowledge of and participation in setting and maintaining BVCF's conditions. But Thompson has not alleged any facts to show that defendants Hansen or Cattell have any involvement with or responsibility for overcrowding or understaffing at BVCF. Accordingly, we affirm the dismissal of this claim as against Hansen and Cattell.

## III. Fourteenth Amendment Claims

As stated above, Thompson's bodily privacy allegations invoke the Fourteenth Amendment. In addition, Thompson explicitly alleges an equal protection violation with regard to the shower policy and a due process violation from being transferred to the lower East Unit.[2]

### A. Bodily Privacy – Shower Conditions

An inmate's interest in bodily privacy may be restricted "only to the extent necessary to further the correction system's legitimate goals and policies." *Cumbey,* 684 F.2d at 714. In *Cumbey*, this court held that the district court erred in dismissing

---

[2] Thompson's opening brief does not challenge the dismissal of another equal protection claim predicated upon double-bunking prisoners in the lower East Unit while single-bunking prisoners elsewhere in BVCF.

13

as frivolous a prisoner's claim that being viewed naked by female guards violated his privacy. *Id.* Although in this case the district court stated it had found no cases holding "that an inmate has a constitutional right to a private shower," R. at 95, it is not legally frivolous for Thompson to seek to extend precedent such as *Cumbey* to the proposition that an inmate with PTSS/D from childhood abuse has an interest in bodily privacy that would preclude being required to shower communally with other inmates, including sex offenders.

As discussed above, however, because Thompson has been allowed to shower privately since before he commenced this lawsuit, he lacks standing to proceed with this claim against defendants in their official capacities. This claim may only proceed against defendants in their individual capacities.

### B. Equal Protection – Shower Policy

The Equal Protection Clause requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "This provision creates no substantive rights," but "[i]nstead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "[T]o establish an equal protection violation, [Thompson] must allege facts that [the defendants] treated him differently than other similarly situated prisoners." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019). "Individuals are 'similarly situated' only if they are alike in all relevant respects." *Id.* (internal quotation marks omitted). Inmates must also show that "the difference in treatment

14

was not reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (internal quotation marks omitted).

Thompson argues that it is an equal protection violation for A.R. #100-40 to guarantee private showers to transgender and intersex inmates but not to other inmates with special needs such as his PTSS/D. The district court found this claim frivolous on the ground that Thompson had not satisfied the "similarly situated" element "because he is not transgender nor intersexual." R. at 96. "Further, there is a legitimate penological interest for allowing transgender and intersexual inmates to shower privately. Therefore, [Thompson] has failed to demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Id.*

For purposes of surviving initial screening for frivolity, however, Thompson adequately alleged that he is similarly situated to transgender and intersex inmates with regard to the relevant respect – prisoners who, for legitimate reasons of personal safety (either mental or physical), have a need for private showers. We also conclude that it is not legally frivolous for Thompson to contend that there is no legitimate penological interest in privileging some inmates with special needs for private showers while rejecting the requests of other inmates with special needs. The claim may fail upon further examination, but at this stage we are not satisfied that it is legally frivolous. Nevertheless, as discussed above, because Thompson has been allowed to shower privately since before he commenced this lawsuit, he lacks

15

standing to proceed with this claim against defendants in their official capacities. This claim may only proceed against defendants in their individual capacities.

## C. Due Process – Transfer to Lower East Unit

Finally, the amended complaint seeks to assert a due process claim arising from Thompson's placement on the lower East Unit. It states that Thompson "is classified as a Minimum/Minimum Restrictive Level prisoner, yet, he is housed in what is supposed to be a Medi[]um Custody level area of BVCF which is in fact managed like a Close and/or Maximum Security level facility." R. at 71. "Without any [administrative] due process procedures, proceedings, and/or protections, Plaintiff was arbitrarily re-classified and forced to be housed in a higher custody level housing unit than his CDOC classification requires." *Id.* at 73 (brackets in original). The district court properly dismissed this claim as legally frivolous.

"To establish a due-process violation, a prison inmate challenging the conditions of his confinement must show that the defendants deprived him of a constitutionally protected liberty interest." *Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th Cir. 2018). The Constitution itself does not create the required liberty interest for state inmates. *See Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (internal quotation marks omitted). Instead, "[a] protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship in relation to the ordinary incidents of prison life." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (ellipsis and quotation marks omitted). Thompson's description of a transfer from a

16

general population living situation that provided various incentives to another general population ward with harsher conditions does not satisfy this difficult standard. *See id.* at 1014, 1015 (noting that the appropriate comparison is between "the nature of the challenged conditions to the type of nonpunitive confinement routinely imposed on inmates serving comparable sentences" and holding that the conditions in the general population unit at ADX "are not extreme as a matter of law").

## CONCLUSION

Thompson's second motion for appointment of counsel is denied. We reverse the dismissal of the following claims and remand for further proceedings: (1) the Eighth Amendment claim as to BVCF's shower conditions and policy against defendants in their individual capacities; (2) the Eighth Amendment claim as to overcrowding and understaffing at BVCF against defendant Lengerich; (3) the Fourteenth Amendment bodily privacy claim against defendants in their individual capacities; and (4) the Fourteenth Amendment equal protection claim against defendants in their individual capacities.[3] We affirm the dismissal of all other claims.

---

[3] On September 23, 2019, Mr. Thompson filed in this court a notice of change of address. We leave it to the district court on remand to assess the implications, if any, of Mr. Thompson's change of address.

17

We note that this decision rests on the narrow ground of legal frivolity, and nothing herein should be read to limit the district court's ability to decide the remanded claims on any other ground that may arise or be asserted on remand.

Entered for the Court


Allison H. Eid
Circuit Judge